THE LEAVENWORTH, NORTHERN & SOUTHERN RAILWAY COMPANY v. OTTO MEYER.

1. RAILROAD RIGHT-OF-WAY — *Commissioners — Adjournment — Notice.* Commissioners appointed to condemn a right-of-way for a railroad may, after legally convening, adjourn for a reasonable length of time, and all persons brought within their jurisdiction by the notice of the first meeting are bound to take notice of such adjournments.

2. REPORT, *Not Void on Face.* A report filed by commissioners, which recites that they met at the time and place named in the notice, and proceeded to lay off a route, that a legal adjournment was had, and further states that they met at a later time and another place, in pursuance of adjournment, when they proceeded with the completion of their work, does not show that the adjournment was without notice or illegal; neither does it show an abandonment of the proceedings under the original notice, nor a loss of jurisdiction; and such report is not void upon its face.

3. PRESUMPTION *as to Report.* All the statements in the report are to be considered together and given a reasonable construction; and in the absence of a contrary showing, it will be presumed that the proceedings of the commissioners were right and regular.

*Error from Leavenworth District Court.*

THE opinion states the nature of the action and the material facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error:

A reasonable construction of the report of the condemnation commissioners showed that their proceedings were valid, and that the land was duly and legally condemned. The court erred in excluding their report. Lewis, Em. Dom., § 418; Gen. Stat. of 1889, ¶ 1391.

The rule is well established, especially with respect to the acts of public officers, that everything is presumed to be rightly and duly performed until the contrary is shown. See Broom's Legal Maxims (7th ed.), pp. 943, 944; 19 Am. & Eng. Encyc. of Law, pp. 42, 43; see also pages 49 and 50; *Gonzales v. Ross,* 120 U. S. 606. The report of the commissioners is to be reasonably construed. See *Hunt v. Smith,* 9 Kas. 154; *Willis v. Sproule,* 13 id. 208. If an instrument is capable of two constructions, by one of which it may stand and by the other fall, that construction is to be adopted which will sustain the instrument. The maxim, *Ut res magis valeat quam pereat,* is applicable. Broom's Legal Maxims (7th ed.), pp. 540, 549; *Muir v. City of Glasgow Bank,* L. R., 4 App. Cas. 356; *Kenton County Court v. Bank Lick Turnpike Co.,* 10 Bush, 530; 19 Am. & Eng. Encyc. of Law, p. 43, note.

This case is vastly different from that of the *M. K. & C. Rld. Co. v. Town Co.,* 26 Kas. 503, for in that case it appeared that the commissioners adjourned indefinitely, to meet at the call of the president, and filed a written report of their proceedings up to that date.

No written notice is necessary with reference to condemnation proceedings, and the condemnation proceedings themselves are not affected at all by a failure to give written notice to an occupant of the land. See *C. K. & W. Rld. Co. v. Abbott,* 44 Kas. 170.

*L. B. & S. E. Wheat,* for defendant in error:

It cannot be considered that any adjournment was made other than such as are specifically named; that is, only such as are mentioned as being made from one day to another specified; that is, stated in the report or by minutes thereon. There is not any statement of an adjournment from the 8th day of November to any other day, from which it follows that the commissioners did not, even by the form of an adjournment, pass the time from the 8th to the 22d of November. By failing to do anything between the 8th and 22d, we submit that the commissioners had lost power to act under said notice.

The notice said the commissioners would meet at that crossing on the 8th of November, and proceed with the work. As they had not proceeded with the work until the 22d of November, and did not give any new notice that they would proceed on the 22d, of course that notice became as though it had not been given. That it is and should be held void, see *Mo. Pac. Rly. Co. v. Houseman,* 41 Kas. 300; *M. K. & C. Rly. Co. v. Town Co.,* 26 id. 503.

We submit that the report not only fails to show that the commissioners commenced to proceed to lay off any route on the 8th, or at any time before the 22d; but, on the contrary, it affirmatively shows that the commissioners did not proceed to lay off any route, etc., until the 22d, and if we are right in this, it follows that the report is void. It appears from uncontradicted evidence that Meyer actually resided on the land appropriated; this, together with the fact that he did not have notice of the appraisement or of the filing of the report of the commissioners until the aforesaid 13 days after they had filed their report, that he did not have such notice as an actual resident should have, under § 49 of chapter 23 of the Gen. Stat. of 1889. See *Hunt v. Smith,* 9 Kas. 137.

The opinion of the court was delivered by

JOHNSTON, J.: Otto Meyer brought this action against the Leavenworth, Northern & Southern Railway Company, to

recover $5,000 as damages for the appropriation, without license or consent or the giving of compensation therefor, of a strip of land through his farm, for the construction and operation of a railroad. The railway company answered that it had obtained an easement through the land by formal and lawful condemnation proceedings. On the trial, it was shown that the company built a railroad through Meyer's land, and evidence was submitted as to the nature and extent of the injury caused to the land by the construction of the road. The railway company then offered in evidence the report of the proceedings of the condemnation commissioners, but, upon objection, it was held that the report was void upon its face, and therefore inadmissible. The trial resulted in a verdict and judgment in favor of Meyer, and the company asks a review of the ruling excluding the report of the condemnation commissioners.

It appears from the report that, upon application made to the judge of the district court of Leavenworth county, commissioners were duly appointed to lay off a route for a railroad through the county of Leavenworth, and that legal notice was given by the railroad company and by the commissioners of the time and place when they would proceed with the work of condemnation. The notice provided that the commissioners would "meet at the crossing of Delaware street and Broadway, in the city of Leavenworth, on the 8th day of November, 1886, at 10 o'clock A. M., and proceed with the work above specified from that point." It recites that they did meet at the time and place mentioned in the notice, and proceeded with their work, and that after several adjournments the report of their proceedings was filed with the county clerk on the 18th day of December, 1886. The objection made to the report is, that it shows that the commissioners did not meet and proceed with their work at the time and from the place first mentioned in the notice; that, instead of beginning on November 8, 1886, they began on November 22, 1886, and that no legal adjournment from November 8, or any notice of a change of time and place of beginning was given to Meyer.

The report shows, as has been stated, the appointment and qualification of the commissioners, the giving of notice, and then proceeds as follows:

"That at the time and place mentioned in said notice aforesaid, we met and proceeded to lay off such route, side tracks, etc., for such distance through said county as was desired, and of such width within the limits aforesaid, and upon such location as was desired by the said company, and shown by map and profile of said railroad filed in the office of the county clerk of said county, which is hereby referred to for greater certainty, having the same carefully surveyed, and ascertaining carefully the quantity of land necessary for such purpose out of each quarter section, or other lot of land through which said route, side tracks, etc., is located, and did appraise the value of such portion of any such quarter section or other lot of land, and assess the damage thereto; and when we ascertained that such portion of such quarter section or lot belonged to different owners, we appraised the value and assessed the damage of each owner's interest, all of which proceedings are fully shown by a schedule attached to this report and made part hereof, and marked 'Exhibit A.' *All of which proceedings were had on the day named, and at meetings held from time to time, upon adjournments according to law.*"

The schedule or exhibit referred to follows, and it first gives a description of several tracts of land, with the quantity taken from each, the value of the same, and the damages to the remainder, in the usual form, and then proceeds:

"In pursuance of adjournment, as shown by minutes of the report hereto attached, M. L. Hacker, A. B. Havens, and Clement F. Jaggard, commissioners appointed by Robert Crozier, judge of the district court of Leavenworth county, Kansas, did meet on the 22d day of November, A. D. 1886, at 9 o'clock A. M., at the office of A. B. Havens, in the city of Leavenworth, to which place we had adjourned as shown by said minutes heretofore attached, and we proceeded to the farm of Otto Meyer, in section 36, in town 10, of range 22, Leavenworth county, Kansas, and laid off a route for said above-described railroad track, etc., and appraised the land taken therefor, and such other duties as required by law, as shown by the appraisement and assessment of damages in the

name of owners, as far as we have been able to ascertain, commencing at section 36, town 10, range 22, and ending in section 24, town 10, range 22."

It is then recited that, in pursuance of adjournment, they met again on the 11th of December, at a certain point to which they had adjourned, and proceeded with their work; and after giving a long list of lands which had been valued and appraised, it is stated that the board met again on the 13th of December, in pursuance of adjournment, and again proceeded with their work; and after disposing of a number of tracts, it is recited that the board met on December 14, 1886, pursuant to adjournment, and proceeded with their work; and after disposing of a large number of lands and lots, it is recited that they adjourned to December 15, to meet at a certain place, and finding that there was no more work to do, another adjournment was taken until December 16, 1886, when they proceeded to make the report of their doings, and continuing until December 17, 1886, when it was completed. It was filed with the county clerk on the day following. As will be seen, the report does not affirmatively show an illegal adjournment, nor an abandonment or loss of jurisdiction by the commissioners. Although somewhat general in statement, it sets forth that they met at the time and place named in the notice, and proceeded to lay out the route; and further, that they continued to meet from time to time, upon adjournment made according to law, as shown by an attached exhibit. It is true the exhibit makes no mention of the first meeting, and, as the one first mentioned in the exhibit was on November 22, it is contended that there was no adjournment from November 8, and actually no meeting held for the performance of their duties until November 22. All of the report must be considered together and given a reasonable interpretation. So considered, it shows that they met at the proper time and place, and thus acquired jurisdiction as a tribunal. It further shows that an adjournment was had; and while it does not state in detail that there was an adjournment from the 8th until the 22d of November, it does show

that the adjournment was a lawful one, and that when they reconvened on the 22d it was in pursuance of a previous adjournment and at the place to which they had adjourned.

When the commissioners first met they acquired jurisdiction, and, having legally commenced their proceedings, they were at liberty to adjourn from time to time and from place to place, as the circumstances might require. It is not necessary that a new notice should be given for the adjourned meeting. A public announcement of an adjournment to a future time and place is sufficient, and all persons legally before the commissioners are bound to take notice of such adjournment. (Mills, Em. Dom., § 229; Lewis, Em. Dom., § 418.) If the commissioners had adjourned to an indefinite time, or subject to the call of one of their number, as was the case in *M. K. & C. Rly. Co. v. Town Co.*, 26 Kas. 503, they would have lost jurisdiction, and a new notice would have been necessary before they could have further proceeded with their work. Such an adjournment is illegal. But the report in this case says that the adjournments were legal, and we cannot presume to the contrary. It is true, as contended, that the commissioners must conform substantially with the statute, so that every remedy conferred will be available to the landowners. Every material direction of the statute must be strictly pursued in order that their proceedings shall be effective and binding. While the statute specifically prescribes their duties and what the report should embody, it does not provide that it shall contain everything with regard to adjournments. It directs them to lay off the route for the distance and of the width and location desired; to ascertain carefully the quantity of land necessary to be taken out of each quarter section or lot of land for such purposes, and appraise the value of that and to assess the damages thereto; and where it is found that a portion of the quarter section or lot belongs to different owners, they are to appraise the value and assess the damages of each of such owners' interest. These several acts, and nothing else, are required to be embodied in a written report and filed in the office of the county clerk. (Gen. Stat. of 1889, ¶ 1391.)

They are not required to make this report until their work is complete, and as the statute makes no mention that there shall be a record kept of the adjournments, an omission of such a statement will not invalidate the report.   While the commissioners are required to strictly pursue the statutory requirements, the report made by them should be given a reasonable construction.  (*Hunt v. Smith,* 9 Kas. 137; *Willis v. Sproule,* 13 id. 257.)   It would be an unreasonable interpretation of the report to hold that there was no meeting on the 8th of November, or that there was no adjournment to the 22d of November.   There was an adjournment; it is stated that it was a legal adjournment; and the meeting on the 22d was held in pursuance of the adjournment.   The report does not show that the adjournment was without notice, and in the absence of such a showing we have no right to infer that the commissioners acted wrongfully or illegally.   Even if the report was silent as to the legality of the adjournments, it would be presumed that they were regular.   In Lewis on Eminent Domain, § 522, it is said that "it will be presumed, however, that the tribunal has proceeded rightly and according to the statute, until the contrary appears." (See, also, Mills, Em. Dom., § 243; 19 Am. & Eng. Encyc. of Law, 42.)

We think the report should have been admitted in evidence.

The judgment of the district court will be reversed, and the cause remanded for another trial.

All the Justices concurring.