THE CHICAGO, KANSAS & WESTERN RAILROAD COMPANY v. U. E. NEED, *as Sheriff of Clay County, et al.*

No. 96.

1. EMINENT DOMAIN—*Cannot be Exercised by Railroad on its Property.* The right of eminent domain cannot be exercised by a railroad corporation with respect to a right of way, when it is already the absolute owner of the land included therein; and condemnation proceedings had under such circumstances are ineffective against a mortgage lien placed thereon by a former owner.

2. CONDEMNATION PROCEEDINGS — *not Effective Against Mere Lien*. Condemnation proceedings cannot be instituted by a railway corporation for the special purpose of condemning a mere mortgage lien on land the absolute title to which is vested in such corporation subject to the lien. The law does not recognize a mere lien as an interest in real estate which is subject to such proceedings.

MEMORANDUM.—Error from Clay district court; R. B. SPILMAN, judge. Action to enjoin sale of right of way by The Chicago, Kansas & Western Railroad Company against U. E. Need, as sheriff of Clay county, and Peter Sanborn. Judgment for defendants. Plaintiff brings the case to this court. Affirmed. The opinion herein, filed February 14, 1896, states the material facts.

*A. A. Hurd*, and *Stambaugh & Hurd*, for plaintiff in error.

*Beardsley, Gregory & Flannelly*, for defendants in error.

The opinion of the court was delivered by

GARVER, J.: The principal question to be determined in this case is this: After a railway corporation has acquired the title in fee simple, by purchase from the owner, of a strip of land for the right of way of its road through a larger tract which is subject to a mortgage, can it, by condemnation proceedings, wipe out the mortgage lien on the right of way? The plaintiff in error contends that it can, and by this action sought to enjoin the sale of the right of way, which was threatened under a judgment of foreclosure of the mortgage. The injunction was denied.

In purchasing the right of way from the owner, and accepting the absolute title thereof, the railway company acted in a mere private capacity, and acquired

only such title as would have vested in an individual under a similar conveyance ; as grantee, it took subject to the lien of the mortgage, with the equitable right — no part of the mortgage debt being assumed — to have the land not conveyed first exhausted under a foreclosure of the mortgage. In accordance with this rule, in an an action brought after the conveyance to the railroad company to foreclose the mortgage upon the quarter-section of land from which the right of way had been taken, the court sustained the mortgage lien upon the entire tract, but directed that the right of way should be sold only in case the remaining land did not sell for sufficient to satisfy the judgment. The railroad company, being a party to the foreclosure suit, was bound by the judgment therein. Subsequently the railroad company instituted proceedings under the statute for the condemnation of this right of way, which was then, and had been for two or more years, occupied by the company in the operation of its road. The application for the appointment of the commissioners and the report filed by them were in the form common to condemnation proceedings. The report purported to be an appraisement and condemnation of about 13 acres of land, the damages being assessed at $1.

The right of eminent domain grows out of the necessities of the public, and is enforced only for public or *quasi*-public uses. This right may be, and generally is, delegated to railroad corporations to enable them, without interference or delay, to construct their roads through the lands of private owners. When the necessity for the exercise of such right does not exist, recourse cannot be had to it. It certainly was not the intention of the legislature that the right of eminent domain should be vested in any such cor-

poration for the purpose of acquiring an interest in lands inferior to that already possessed. In such a case the corporation asks for an appraisement of the damages which it proposes to inflict upon itself by a voluntary appropriation of its own property for uses which are entirely proper and legitimate for it, as owner, to make. The ultimate object of the proceeding is to enable it to deposit with the county treasurer the amount of damages so ascertained, in order that it may receive the same for its own indemnity. After such superfluity of action, it is somewhat difficult to comprehend just what has been accomplished. If the company were not the absolute owner of the fee, and there were interests held by other parties which were subject to appropriation under the right of eminent domain, the mere fact that the company already had an interest would probably not prevent it from appropriating outstanding interests by the same proceedings, and to the same extent as would be proper in case it had no previously-acquired interest. For example, a leasehold estate in the right of way, already possessed by the railroad company, would not prevent it from thus subjecting and appropriating all other interests, legal or equitable, in the land. (*N. Y. & H. Rld. Co. v. Kip*, 46 N. Y. 546.) Under condemnation proceedings, only an easement or right of occupancy for railroad purposes is acquired — an interest inferior to the fee. As a general rule, an inferior interest or title is merged in the greater interest or superior title which is vested in the same person, and an owner's rights are measured by the latter. It is a contradiction of terms to say that one who is the absolute owner of real estate can acquire an easement in his own lands. We are of the opinion, therefore, that the condemnation proceedings under considera-

tion were unauthorized in law and wholly nugatory, so far as they were instituted for the purpose of affecting the railroad company as owner, and that they could have no incidental effect upon the mortgage.

Did the condemnation proceedings affect the mortgage lien, even if they were specially instituted for that purpose? Under the decisions of the supreme court of this state, a mortgagee is not an owner with an interest in the land mortgaged so as to make him a proper party to such proceedings. In this state, a mortgage vests no title and conveys no interest in the land; it creates a mere lien. ( *Chick v. Willetts*, 2 Kan. 384; *Vanderslice v. Knapp*, 20 id. 647.) While the word "owner," as used in our statutes with reference to real estate, has a very broad meaning, it cannot be construed to apply to persons who have no interest whatever. In most of the cases, where this question has been raised and considered, railroad companies have contended that a mortgagee was not a party to condemnation proceedings; that he had no interest in the land; no right to appeal from any award that might be made; and that his lien was wholly subject to the result of the proceedings against the landowner. In this contention they have been sustained by the supreme court. (*Goodrich v. Comm'rs of Atchison Co.*, 47 Kan. 355; *Rand v. Ft. S. W. & W. Rly. Co.*, 50 id. 114; *C. K. & W. Rld. Co., v. Sheldon*, 53 id. 169; *W. & W. Rld. Co. v. Thayer*, 54 id. 259.)

In *C. K. & W. Rld. Co. v. Sheldon*, supra, it was held:

"The mortgagee, however, had only a lien upon the land out of which the right of way was taken. He was not the owner of the same nor the owner of an estate therein. Not being an owner within the meaning of our statutes, it was not necessary to name the

mortgagee in the proceedings, nor to make any award to him."

It is a necessary deduction that if the mortgagee had no interest, nor any right to be considered in making the award, he had no right to appeal. (*C. K. & W. Rld. Co. v. Grovier*, 41 Kan. 685.)   The only right or interest, under such condemnation proceedings, which the supreme court has recognized in the mortgagee, is his right, where equity warrants, to resort to the fund awarded and have it applied on his mortgage. (*C. K. & W. Rld. Co. v. Sheldon*, 53 Kan. 169.)   The force of these decisions is not lessened by the fact that they were in harmony with the views then urged upon the court by the same company that appears as plaintiff in error in the case before us. Under these circumstances, the conclusion is inevitable that there was no outstanding interest to be condemned, and that the rights of the mortgagee were not affected by the condemnation attempted in this instance.

The case of *Kennedy v. M. & St. P. Rly. Co.*, 22 Wis. 582, to which we are cited by counsel for plaintiff in error, involved some questions similar to those in this case.   An examination of that case shows, however, that what is said in the opinion of the court concerning the condemnation of a mortgagee's lien is based upon the statutes of Wisconsin, which make special provisions for such cases.   As we have no similar statute in this state, that decision is not applicable.

Of course, it is not just that the railroad company, having in good faith constructed its road through these lands, should be made to suffer unreasonable loss by reason thereof.   The mortgagee has no equitable claims upon the road-bed and railroad tracks. We think it is within the power of a court of equity,

by appropriate proceedings, to preserve and protect the rights of all parties in such a case, but it cannot be done as here attempted.

Judgment affirmed.

All the Judges concurring.